UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO CEJA,<br><br>   Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>   Defendant. | Case No. 1:20-cv-01267-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 17). |

  This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

  Plaintiff argues that (1) "[t]he ALJ failed to provide specific and legitimate reasons for discounting the medical source opinion[s] of Plaintiff's treating physician, Eric Disbrow, M.D.," and (2) "[t]he ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction." (ECF No. 17, pp. 5, 10). Having

reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

I. ANALYSIS

    A. ALJ's Discounting of Dr. Eric Disbrow's Opinions

The parties agree that this claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c; (*see* ECF No. 17, p. 7; *see* ECF No. 18, p. 10). As Plaintiff concedes, "[t]he new regulations no longer provide that a treating medical source opinion will generally receive greater weight." (ECF No. 17, p. 7) (citing 20 C.F.R. § 404.1520c(a)). Instead, the regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The regulations also provide other factors and subfactors, which apply when there are multiple medical opinions that are "both equally well-supported . . . and consistent with the record . . . but are not exactly the same[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). One of these factors is the relationship of the medical source with the claimant, with subfactors including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). Plaintiff relies on these factors and subfactors to argue that the "the agency continues to recognize that a treating medical source is in a unique position to observe and evaluate a claimant's impairments." (ECF No. 17, p. 7). However, the Court notes that the relationship-with-the-claimant factors and subfactors are only considered when the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). Here, the ALJ did not find that Dr. Disbrow's medical opinions were equally well-supported or consistent with other medical opinions. Thus, the

relationship-with-the-claimant factors are not implicated here.

Plaintiff argues that "despite the change in the regulations," an ALJ "must provide at least specific and legitimate reasons for rejecting a treating medical source's opinion even if that opinion conflicts with another medical source opinion." (ECF No. 17, p. 8). As Plaintiff notes (*id.* at 6), the Ninth Circuit held, prior to the new regulations, that "[t]o reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence," *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017)

While Defendant argues that the new regulations supplant previous case law regarding the hierarchy of medical opinions and states that the ALJ's decision is supported by substantial evidence, Defendant does not directly address the articulation standards. (ECF No. 18, pp. 13-17). The Court notes that at least one district court has continued to apply the "specific and legitimate" standards for articulation and that the Ninth Circuit has not weighed in on this issue. *See Kathleen G. v. Commissioner of Social Security*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (noting that "the new regulations [] do not clearly supersede the 'specific and legitimate' standard"); *cf. Thompson v. Comm'r of Soc. Sec.*, No. 2:20-CV-3-KJN, 2021 WL 1907488, at *3 n.3 (E.D. Cal. May 12, 2021) (noting "it is not yet clear how much the new regulations affect other Ninth Circuit principles governing Social Security review" but concluding that, "[i]n the absence of binding interpretation by the Ninth Circuit, the court joins other district courts in concluding that longstanding general principles of judicial review—especially those rooted in the text of the Social Security Act—still apply to cases filed on or after March 27, 2017").

///

Because, as discussed, the Court concludes that the ALJ gave specific and legitimate reasons supported by substantial evidence for the weight given to Dr. Disbrow's opinions, taking into account the opinions' supportability and consistency, the Court need not reach the issue of whether the new regulations have changed the articulation standard.

Turning to the merits, Plaintiff argues that the ALJ improperly rejected Dr. Disbrow's opinions. (ECF No. 17, p. 5).

As the ALJ concluded that Dr. Disbrow's opinions were contradicted by other doctors' opinions, the Court considers whether the ALJ provided specific and legitimate reasons for discounting Dr. Disbrow's opinions.

Here, the ALJ provided the following reasons for discounting Dr. Disbrow's opinions:

> The undersigned finds the physical limitation opinions of Eric Disbrow, M.D. . . . to be unpersuasive, as they are inconsistent and unsupported. Dr. Disbrow limited the claimant to rarely lifting less than ten pounds, never twisting, stooping, crouching, squatting and climbing, never overhead reaching bilaterally, being off-task five percent of the workday, capable of only low stress work and being absent from work more than four days a month due to his medical conditions. (Exhibit 10F). . . . Dr. Disbrow's . . . opinions are inconsistent with the claimant's mostly normal physical examinations findings. (Exhibits 2F/2, 5; 4F/4, 6-7, 9-10, 12, 15, 17, 19- 20, 22, 27-28, 30-32, 34-35, 37-38, 40; 6F/13-15; 8F/3, 7; 11F/2-3; 12F/3-4, 7, 10, 16; 13F/1-2; 14F/6, 9) Dr. Disbrow's . . . opinions are unsupported by the evidence of record along with the results of Dr. Disbrow's, or his practice's, multiple medical appointments with the claimant where he did not seek treatment for his back or neck pain. . . . (Exhibits 7F; 10F; 12F; 13F; 14F)

(A.R. 24).

The ALJ's first reason for discounting Dr. Disbrow's opinions—because they were "inconsistent with the claimant's mostly normal physical examinations findings"—is supported by the record. (*Id.*). As the ALJ noted, some of Dr. Disbrow's own records indicated normal findings that could reasonably appear inconsistent with the degree of limitations found by Dr. Disbrow. (*Id.* – citing Exhibit 4F/4, 6-7, 9-10, among other records). For example, records cited by the ALJ reveal findings of "no apparent distress," that Plaintiff's "[n]eck [was] supple with full range of motion," and that he had "grossly normal tone and muscle strength." (A.R. 286, 288-89, 295-96; *see also* A.R. 22 (the ALJ noted that "[t]he claimant had multiple mostly normal

physical examinations finding normal neck range of motion, full strength, normal sensation, a normal gait and station with a reduced lumbar range of motion and intermittent findings of reduced reflexes and sensation")).

Moreover, the ALJ accurately observed that other medical opinions likewise indicated normal findings that indicated that Plaintiff's limitations were not as great as what Dr. Disbrow suggested. For example, the ALJ cited the findings of Dr. Frank Minor, a third-party consultative physician. (A.R. 24 – citing Exhibit 6F/13-15). While Dr. Minor noted that Plaintiff had a reduced range of motion in the lumbar spine, he also found that Plaintiff's "motor strength" in the upper and lower extremities was "5/5" and Plaintiff had "no difficulty heel or toe walking." (A.R. 728-30; *see also* A.R. 24 (the ALJ noted that "Dr. Minor's opinions are partially consistent with the claimant's mostly normal physical examination findings including reduced lumbar range of motion")). Similarly, the ALJ cited to the evaluation of Dr. B. Serra, a consulting physician, who noted that Plaintiff's "[s]trength is 5/5 in the bilateral upper and lower extremities, including grip." (A.R. 24 – citing Exhibit 11F/2-3; A.R. 832).

The ALJ's second reason for discounting Dr. Disbrow's opinions—Plaintiff's failure to seek treatment for his back or neck pain—is also supported by the record. (A.R. 24 – citing Exhibits 7F; 10F; 12F; 13F; 14F). Plaintiff correctly points out that Plaintiff sought treatment from Dr. Disbrow for the entirety of their treating relationship. (*See* ECF No. 19, p. 3). However, as Defendant references, earlier in the ALJ's decision, in discussing why Plaintiff's subjective complaints were inconsistent with the record, the ALJ stated as follows: "According to the evidence of record, the claimant did not seek medical treatment specifically for his neck or low back pain since November 2017, indicating that after that date, the claimant was satisfied with the treatment of his conditions. (Exhibits 12F; 13F; 14F)." (A.R. 22). The records cited by the ALJ show instances where Plaintiff failed to seek treatment for back and neck pain from medical providers other than Dr. Disbrow after November 2017. (A.R. 24). For example, exhibit 12F reveals an appointment with another medical provider on September 12, 2018, with Plaintiff's

chief complaint being listed as "[h]igh blood pressure." (A.R. 847). Notably, Plaintiff was evaluated as having "no muscle aches or weakness and no arthralgias/joint pain, back pain, or swelling in the extremities" and his neck was described as "supple." (A.R. 849). On October 3, 2018, Plaintiff had an appointment for "lab results" and although it is noted that he suffers from "chronic back pain," Plaintiff was evaluated as having "no muscle aches or weakness and no arthralgias/joint pain, back pain, or swelling in the extremities" and his neck was "supple." (A.R. 843, 845, 846). Again, Plaintiff had an appointment on December 3, 2018, with the chief complaint being "f/u HTN," which the Court construes, based on the context of the record, as Plaintiff following up on his hypertension. (A.R. 840, *see* A.R. 843 (noting Plaintiff as having "[e]ssential hypertension")). Notably, Plaintiff reported "no muscle aches or weakness and no arthralgias/joint pain, back pain, or swelling in the extremities" and his neck was "supple." (A.R. 842).

The Court thus concludes that the ALJ's reasons for giving less weight to Dr. Disbrow's opinion are specific and legitimate and supported by substantial evidence.

### B.    ALJ's Discounting of Plaintiff's Subjective Complaints

Plaintiff next argues that "[t]he ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction." (ECF No. 17, p. 10). The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 22). And because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) ("The only time [the clear-and-convincing] standard does not apply is when there is affirmative evidence that the claimant is malingering."); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (noting that findings regarding a plaintiff's subjective complaints of pain "must be supported by clear and convincing reasons why the [plaintiff's] testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole").

Here, the ALJ summarized as follows the Plaintiff's subjective complaints and the reasons for discounting them:

> During the hearing, the claimant reported that his typical day consists of getting up at four or five in the morning to take medication for his back pain, going to a local pool or gym, showering and sitting in a recliner because laying flat hurts his back. (Hearing Testimony) The claimant stated that he does not do chores at home, can walk for five minutes around the house and that he stretches, uses the pool and walks at the gym. (Hearing Testimony) The claimant reported that he can sit in a normal chair for five to ten minutes, can drive for no more than thirty minutes, can stand and walk for a total of one hour during the day and sit for a total of thirty minutes during the day. (Hearing Testimony) The claimant also reported numbness in his hands, being able to open a bottle of water, that his physician told him not to reach overhead, that he cannot bend and that the most he can lift and carry is a gallon of milk. (Hearing Testimony)
> . . . .
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent for the following reasons. The claimant had multiple mostly normal physical examinations finding normal neck range of motion, full strength, normal sensation, a normal gait and station with a reduced lumbar range of motion and intermittent findings of reduced reflexes and sensation. (Exhibits 2F/2, 5; 4F/4, 6-7, 9-10, 12, 15, 17, 19-20, 22, 27-28, 30-32, 34-35, 37-38, 40; 6F/13-15; 8F/3, 7; 11F/2-3; 12F/3-4, 7, 10, 16; 13F/1-2; 14F/6, 9) According to the evidence of record, the claimant did not seek medical treatment specifically for his neck or low back pain since November 2017, indicating that after that date, the claimant was satisfied with the treatment of his

conditions. (Exhibits 12F; 13F; 14F) The claimant's physician reported that the claimant is capable of taking an exercise stress test and/or participating in an exercise program during an October 2018 and January 2019 medical appointments. (Exhibits 14F/6 and 9) The claimant reported that his medication gave him moderate pain relief. (Exhibit 2F/4) Neither the claimant, nor his physicians, ever sought surgical treatment for the claimant's neck and lower back pain, indicating less invasive forms of treatment were successful in treating the claimant's conditions.

(A.R. 20, 22).

Regarding "normal physical examinations," this Court finds that the ALJ's determination was adequately supported by substantial evidence. For example, Plaintiff's otherwise full-strength examination findings could reasonably be considered inconsistent with his subjective complaints (*e.g.*, Plaintiff's claimed inability to carry more than a gallon of milk). (*See* A.R. 22). Regarding medical records indicating that Plaintiff could participate in exercise programs in addition to undergoing exercise testing, (A.R. 22 - citing Exhibit 14F/6 and 9), while Plaintiff argues that the record does not reveal what such a test involves, (ECF No. 17, p. 12), the Court concludes that it was reasonable for the ALJ to determine that any sort of exercise activity would appear inconsistent with Plaintiff's subjective testimony of disabling pain (e.g., that Plaintiff "can only stand for about five minutes" before needing to "lean against the counter or wall due to back pain"). (A.R. 20).

Further, the ALJ's noted that Plaintiff's failure to undergo spinal surgery indicated that his allegations were not as severe as claimed. (A.R. 22). While Plaintiff argues that his prescription for pain medication and epidural steroid injection were consistent with his subjective symptoms, (ECF No. 17, p. 13), the ALJ reasonably concluded that more aggressive treatment would be expected given the severity of Plaintiff's reported limitations.

The Court thus finds that the ALJ provided clear and convincing reasons for the weight given to Plaintiff's subjective symptom testimony.

\\\

\\\

\\\

## II. CONCLUSION AND ORDER

Thus, the decision of the Commissioner of Social Security is hereby affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __October 6, 2021__          /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE